EXHIBIT "A"

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| CODY MAX BECKER, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> KELLER WILLIAMS REALTY, INC.., a Texas corporation, and KRISTAN COLE, <br><br> Defendants. | <u>CLASS ACTION</u> <br><br> **JURY TRIAL DEMANDED** |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff Cody Max Becker ("Plaintiff"), files this Class Action Complaint against Defendants Keller Williams Realty, Inc. ("Keller Williams") and Kristan Cole ("Ms. Cole") (collectively, "Defendants") and alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys and publicly available information.

## <u>NATURE OF THE ACTION</u>

1.    Defendants violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, ("TCPA"), by making unsolicited prerecorded telemarketing calls[1] and text message calls in violation of consumers' privacy rights.

---

[1]    The term "call" is not defined by the TCPA.  *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953 (9th Cir. 2009).  "Webster's defines 'call' . . . as 'to communicate with or try to get into communication with a person by a telephone.'"  *Id.* at 953-54 (citing *Webster's Third New International Dictionary* 318 (2002)).

2.      Keller Williams is one of the largest real estate companies in South Florida and America.

3.      Ms. Cole acts as the Vice President of Mega Agent Expansion ("Mega Agent Expansion") for Keller Williams.[2] As part of that role, Ms. Cole appears in marketing videos on behalf of Keller Williams and tours the country marketing Mega Agent Expansion at orientations called Expansion Systems Orientations.[3] The Expansion Systems Orientation program was created by Keller Williams.[4]

4.      "Mega Agent Expansion", is "based on the vision of Gary Keller and the collective masterminding of top agents across North America."[5] and allows realtors to team-up with "expansion partners" in markets outside their own.[6] These expansion partners handle the listing and selling of individual properties, while the "hub" takes care of all the administrative and lead generation.[7]

5.      Keller Williams uses Mega Agent Expansion to try and lure new brokers and agents to join Keller Williams and to help existing Keller Williams agents generate new business.

6.      As part of the Mega Agent Expansion program, Ms. Cole owns and/or operates the Kristan Cole Real Estate Network a/k/a Lifestyle Homes Worldwide, a coordinated team of thirty-four (34) Keller Williams real estate locations.[8] Five of which are located within Florida.[9]

---

[2] https://kristancole.com/our_team
[3] https://www.kw.com/kw/expansion.html.
[4] https://www.kwconnect.com/search?q=kw+expansion
[5] https://www.kw.com/kw/expansion.html
[6] *Id.*
[7] *Id.*
[8] https://kristancole.com/locations
[9] *Id.*

7. To promote Keller Williams, Defendants' caused thousands of prerecorded messages and unsolicited text messages to be sent to the cellular telephones of Plaintiff and other Class Members, soliciting them to attend an Expansion Systems Orientation.

8. Through this action, Plaintiff seeks to hold Defendants accountable for their flagrant violations of the TCPA, and for violating the privacy of thousands of consumers.

9. Plaintiff, for himself and a Class of similarly situated individuals, seeks relief to halt Defendants' unlawful conduct. Plaintiff also seeks statutory damages on behalf of himself and members of the Class, and any other legal or equitable remedies to redress Defendants' violations of the TCPA.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, given Defendants' alleged violations of a federal statute. This Court also has subject matter jurisdiction pursuant to the U.S. Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d)(2) and (d)(6), because there is diversity of citizenship and the claims of individual Class members, in the aggregate, exceed the jurisdictional minimum of $5,000,000, exclusive of interest and costs.

11. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants are deemed to reside in any judicial district in which they are subject to the court's personal jurisdiction, and because Defendants provide and market their services within this District, thereby establishing sufficient contacts to subject them to personal jurisdiction. Further, Defendants' tortious conduct against Plaintiff and other members of the Class occurred within the State of Florida, thereby subjecting Defendants to jurisdiction in the State of Florida.

## PARTIES

12.     Plaintiff is a natural person who, at all times relevant to this action, was a citizen of the State of Florida residing in Broward County, Florida.

13.     Keller Williams is a Texas corporation with its principal place of business located at 1221 South Mopac Expressway, Suite 110, Austin, TX 78746.  Keller Williams directs, markets, and provides its business activities throughout the State of Florida.

14.     Upon information and belief, Ms. Cole is a natural person who resides in Alaska. Ms. Cole directs, markets, and provides business activities throughout the State of Florida. Ms. Cole operates and/or owns five (5) separate real estate offices in Florida as members of the Kristan Cole Real Estate Network a/k/a Lifestyle Homes Worldwide all of which are associated with Keller Williams.

## THE TCPA

15.    The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system or an artificial or prerecorded voice; (3) without the recipient's prior express consent.  47 U.S.C. § 227(b)(1)(A).

16.    The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

17.    The TCPA exists to prevent communications like the ones described within this Complaint.  *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

18.    In an action under the TCPA, a plaintiff must show only that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

19.    The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA.  According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

20.    A defendant must demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulaions Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

21.     Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("The FCC has determined that a text message falls within the meaning of 'to make any call' in 47 U.S.C. § 227(b)(1)(A)").

## FACTS

### Ms. Coles's Relationship with Keller Williams

22.     The subject prerecorded calls and text messages were sent by Ms. Cole at the direction and under the control of Keller Williams.

23.     Ms. Cole sent the prerecorded calls and text messages as part of her role as Vice President of Mega Agent Expansion.

24.     The subject prerecorded calls and text messages were sent for the benefit of Keller Williams and Ms. Cole.

25.     Prior to transmitting the subject prerecorded calls and text messages, Ms. Cole consulted with Keller Williams as to the content of the messages, and always received final approval to transmit the prerecorded messages and text messages from Keller Williams.

26.     Although Ms. Cole was responsible for ultimately transmitting the prerecorded messages and text messages, Keller Williams always retained the right to change or add something to the content of the messages.

27.     At all times relevant, Keller Williams had the right to control Ms. Cole's telemarketing activities, which right it exercised.

28.     At all times relevant, Keller Williams authorized Ms. Cole to promote its product in the subject unsolicited prerecorded messages and text messages.

29.     Keller Williams was, at all times relevant, aware of Ms. Coles marketing activities and violations of the TCPA.

30.     Ms. Coles acts complained of herein were known, consented to, and/or ratified by Keller Williams. Further, Keller Williams knowingly received and retained monetary benefit from Ms. Coles unlawful calling and telemarketing practices alleged herein.

**Facts Specific to Plaintiff**

31.     On or about September 28, 2019, Ms. Cole on behalf of Keller Williams transmitted a prerecorded telemarketing call to Plaintiff's cellular telephone number ending in 6305 (the "6305 Number").

32.     Defendants' prerecorded message states as follows:

…Here in Sarasota, October 21st and 22nd. I don't know about you, but with the competition in real estate right now, I know a lot of agents aren't making the money that they want to make. So, if you want to make more money, come and be my guest! We'll also have a top agent mastermind on day two to help you create your own success plan. To sign up as my guest, no there's no gimmick. Go to KCNGuest.com or text me or call me back at 512-944-9940. Hope to see you there.

33.     Defendants' transmitted the prerecorded telemarketing call to Plaintiff and others to convince them to attend an Expansion Systems Orientations, at which point Ms. Cole would attempt to sell the benefits of Keller Williams and its Mega Agent Expansion.

34.     The prerecorded telemarketing call was transmitted to Plaintiff's cellular telephone, and within the time frame relevant to this action.

35.     Defendants' prerecorded telemarketing call constitutes telemarketing because it encouraged the future purchase or investment in property, goods, and/or services.

36.     The prerecorded telemarketing call originated from a telephone number (512-944-9940) owned and/or operated by or on behalf of Defendants.

37.     The     website     (the     "Website")     provided     in     the     prerecorded     message

(KCNGuest.com) also promotes Defendants' goods and/or services and is copied below:



10

ESO Covers:

· Grow where you are first!
· Common Myths about Expansion.
· Smart Growth: When, Where, and with Whom to Grow with.
· Applying Gary Keller's *Business Snapshot* to Broaden and then Narrow your Focus.
· The Economics of Growth!
· Building Your Organizational Model for Growth!
· Fueling Your Growth with Massive Lead Generation!
· Essential Leadership Skills and Methods for Single and Multi-location Businesses.

**More about your instructor Kristan Cole:**
CEO Lifestyle Homes Worldwide, a member of The Kristan Cole Real Estate Network

· Mega Agent with 40+ expansion locations with more than 1000 transactions and $300,000,000 in volume projected for 2019
· #1 Expansion Team for a single location in Keller Williams in 2018 by GCI
· Speaker and Elite Coach to the top 1% of all real estate teams & businesses
· 35+ years of Real Estate Experience and broker in multiple states
· Survived, Thrived, and Took Territory in two major real estate recessions
· Finalist Inman Innovator Of The Year 2018
· Several high profile industry rankings such as Top 50 real estate teams by REAL Trends and the Wall Street Journal
· Developed native App for KCN Rewards, a vip loyalty program
· Now partnering and developing additional expansion programs with regions and market centers
· Operating Principal of multiple market centers and business centers, and investor in many
· Founder of Kristan's Home of Hope, 501C3 that supports safe housing for at risk youth!
· Held many positions serving KWRI and Gary Keller including: Talent Search Director, Director KW Commercial Leadership Council, Regional Director of Southwest Region, Vice President Mega Agent Expansion

**Gary Keller recently said this,** "*Kristan is one of the most qualified individuals in our entire industry to teach agent expansion.*"

11

38.     Specifically, the Website states "this is the roadmap of how Gary [Keller] did it starting from the beginning…Expansion Systems Orientation (ESO) is a course from Keller Williams University that will reach successful, productive agents how to consistently and predictably grow teams by expanding into additional market centers using proven models and systems.[12]

---

[11] *Id.*
[12] *Id.*

39.     On or about September 29, 2019, Defendants' also sent Plaintiff the following automated telemarketing text message to his 6305 Number:



40.     Like the prerecorded message sent to Plaintiff the day before, the text message was sent to Plaintiff for marketing purposes.

41.     Specifically, the text message includes a link to the Website and also states "would love for you to be my guest at a great real estate growth class and top agent mastermind…Kristan Cole".

42.     Plaintiff received the subject telemarketing call within this District and, therefore, Defendants' violation of the TCPA occurred within this District.  Defendants caused other telemarketing calls and prerecorded messages to be sent to individuals residing within this District as well.

43.     At no point in time did Plaintiff provide Defendants with his express written consent to be contacted with a prerecorded voice or through an ATDS.

44.     Plaintiff is the subscriber and sole user of the 6305 Number, and is financially responsible for phone service to the 6305 Number.

45.     The number used by Defendants (512-318-2627) is known as a "long code," a standard 10-digit code that enables Defendants to send SMS text messages *en masse*, while deceiving recipients into believing that the message was personalized and sent from a telephone number operated by an individual.

46.     Long codes work as follows: Private companies known as SMS gateway providers have contractual arrangements with mobile carriers to transmit two-way SMS traffic. These SMS gateway providers send and receive SMS traffic to and from the mobile phone networks' SMS centers, which are responsible for relaying those messages to the intended mobile phone. This allows for the transmission of a large number of SMS messages to and from a long code.

47.     Upon information and belief, the number (512-318-2627) that transmitted the text message is operated by or on behalf of Defendants.

48.     The impersonal and generic nature of Defendants' text message, demonstrates that Defendants utilized an ATDS in transmitting the message.

49.     Additionally, on September 29, 2019, Plaintiff replied back "[s]top" to Defendants text message and received the following auto-reply from Defendant:

This auto-reply was transmitted automatically without human intervention in response to Plaintiff's "stop" request. Defendants' use of auto-reply functionality further demonstrates that Defendants utilized an ATDS to text message Plaintiff.

50.     To send the text message, Defendants used a messaging platform (the "Platform") that permitted Defendants to transmit thousands of automated text messages without any human involvement.

51.     The Platform has the capacity to store telephone numbers.

52.     The Platform has the capacity to generate sequential numbers.

53.     The Platform has the capacity to dial numbers in sequential order.

54.     The Platform has the capacity to dial numbers from a list of numbers.

55.     The Platform has the capacity to dial numbers without human intervention.

56.     The Platform has the capacity to schedule the time and date for future transmission of text messages.

57.     To transmit the messages at issue, the Platform automatically executed the following steps:

> (1) The Platform retrieved each telephone number from a list of numbers in the sequential order the numbers were listed;

> (2) The Platform then generated each number in the sequential order listed and combined each number with the content of Defendant's message to create "packets" consisting of one telephone number and the message content;

> (3) Each packet was then transmitted in the sequential order listed to an SMS aggregator, which acts an intermediary between the Platform, mobile carriers (e.g. AT&T), and consumers.

(4) Upon receipt of each packet, the SMS aggregator transmitted each packet
– automatically and with no human intervention – to the respective mobile
carrier for the telephone number, again in the sequential order listed by
Defendant.  Each mobile carrier then sent the message to its customer's
mobile telephone.

58.    The above execution of Defendants' instructions occurred seamlessly, with no
human intervention, and almost instantaneously.  Indeed, the Platform is capable of transmitting
thousands of text messages following the above steps in minutes, if not less.

59.    The following graphic summarizes the above steps and demonstrates that the
dialing of the text messages at issue was done by the Platform automatically and without any
human intervention:



60.    Defendants' unsolicited text message caused Plaintiff actual harm.  Specifically,
the text message caused his cellular telephone to audibly ring which notified him that he got a text
message. Additionally, the prerecorded message caused his cellular telephone to vibrate which
notified him that he got a voicemail message.

61.    Upon receipt the text message, Plaintiff estimates that he spent approximately 8
seconds reviewing Defendant's unwanted message.

62.    Upon receipt of the prerecorded message, Plaintiff estimates that he spent
approximately 31 seconds listening to Defendant's unwanted prerecorded message the first time

and another approximately 31 seconds listening to Defendant's unwanted prerecorded message for a second time. Plaintiff listened to the prerecorded message at least two times, as he was trying to determine who the caller was and why he was being contacted.

63.     Plaintiff was so substantially aggravated by the prerecorded message and text message that he spent approximately 10 minutes trying to research the sender of the messages and to determine why he was being contacted by Defendants.

64.     Plaintiff also wasted time responding "STOP" to the text message so that he would no longer receive messages from Defendant.

65.     After he replied "STOP," Plaintiff received another message confirming that he would no longer be contacted.  He spent additional time reviewing this reply.

66.     Furthermore, Defendants' text message took up approximately 190 bytes of memory on Plaintiff's cellular telephone and depleted Plaintiff's cellular telephone battery. Defendants' Prerecorded Message took up approximately 77,015 bytes of memory on Plaintiff's cellular telephone and also depleted Plaintiff's cellular telephone battery.  The cumulative effect of unsolicited text messages and prerecorded messages like Defendants' poses a real risk of ultimately rendering the phone unusable for text messaging purposes as a result of the phone's memory being taken up.

67.     Lastly, Plaintiff's voicemail space is limited. Defendants' Prerecorded Message occupied voicemail space that therefore became unavailable for other messages from friends, family or anyone else.

## **CLASS ALLEGATIONS**

### **Proposed Classes**

68.     Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

69.     Plaintiff brings this case on behalf of a Class defined as follows:

**Prerecorded Message Class**: All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a prerecorded message, from Defendants or anyone on Defendants' behalf, to said person's cellular telephone number, without emergency purpose and without the recipient's prior express written consent.

**Text Message Class:** All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message using the same type of equipment used to text message Plaintiff, from Defendants or anyone on Defendants' behalf, to said person's cellular telephone number.

70.     Excluded from the Class are Defendants, their officers, directors, affiliates, legal representatives, employees, successors, subsidiaries and assigns, as well as the judge and court staff to whom this case is assigned.  Plaintiff reserves the right to amend the Class definition if discovery of further investigation reveals that the Class should be modified.

71.     Plaintiff does not know the number of members in the Class but believes the Class members number in the several thousands, if not more.

### NUMEROSITY

72.     Upon information and belief, Defendants have placed prerecorded and automated calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express written consent.  The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

73.     The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery.  Identification of the Class members is a matter capable of ministerial determination from Defendants' call records.

### COMMON QUESTIONS OF LAW AND FACT

74. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

      i. Whether Defendants made non-emergency calls to Plaintiff and Class members' cellular telephones using an ATDS and/or Prerecorded Message;

     ii. Whether Defendants can meet its burden of showing that it obtained prior express consent to make such calls;

    iii. Whether Defendants conduct was knowing and willful;

    iv. Whether Defendants are liable for damages, and the amount of such damages; and

     v. Whether Defendants should be enjoined from such conduct in the future.

75. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendants routinely transmits text messages and/or prerecorded messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

76. Plaintiff's claims are typical of the claims of the Class Members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

77. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### SUPERIORITY

78.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendants wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

79.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendants from performing the challenged acts, whereas another may not.  Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**Violations of the TCPA, 47 U.S.C. § 227(b)**
**(On Behalf of Plaintiff and the Text Message Class)**

80.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

81.     It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

17

82.     The TCPA defines an "automatic telephone dialing system" (hereinafter "ATDS") as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id*. at § 227(a)(1).

83.     Defendants – or third parties directed by Defendants – used equipment having the capacity to store telephone numbers, using a random or sequential generator, and to dial such numbers and/or to dial numbers from a list automatically, without human intervention, to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class.

84.     These calls were made without regard to whether Defendants had first obtained express permission from the called party to make such calls. In fact, Defendants did not have prior express consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

85.     Defendants violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express consent.

86.     As a result of Defendants' conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls.

## COUNT II

### Violations of the TCPA, 47 U.S.C. § 227(b)
### (On Behalf of Plaintiff and the Prerecorded Message Class)

87.     Plaintiff re-alleges and incorporates paragraphs 1 through 80 as if fully set forth herein.

88.    It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any prerecorded or artificial voice… to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

89.    Defendants – or third parties directed by Defendants – used prerecorded or artificial voice messages to make non-emergency marketing telephone calls to the cellular telephones of Plaintiff and other members of the Class.

90.    These calls were made without regard to whether Defendant had first obtained express written consent from the called party to make such calls. In fact, Defendant did not have prior express written consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

91.    Defendants violated § 227(b)(1)(A)(iii) of the TCPA by using prerecorded messages to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express consent.

92.    As a result of Defendants' conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls.

**WHEREFORE**, Plaintiff, on behalf of himself and the other members of the Class, prays for the following relief:

A.    A declaration that Defendants' practices described herein violate the TCPA;

B.    An award of actual and statutory damages; and

C.    Such further and other relief the Court deems reasonable and just.

19

## JURY DEMAND

Plaintiff and the Class members hereby demand a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendants take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with Defendants and the calls as alleged herein.

Date: October 24, 2019.

Respectfully submitted,

EISENBAND LAW, P.A.

*/s/ Michael Eisenband*
 Michael Eisenband
Florida Bar No. 94235
515 E. Las Olas Boulevard, Suite 120
 Ft. Lauderdale, Florida 33301
Email:
MEisenband@Eisenbandlaw.com
Telephone: 954.533.4092
*Counsel for Plaintiff*

**HIRALDO P.A.**

Manuel S. Hiraldo
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713
*Counsel for Plaintiff*